[Civ. No. 16031. Second Dist., Div. One. Mar. 16, 1948.]

GOLDIE SIEGELL, Appellant, v. RAY YORK et al., Respondents.

Lyons & Lyons, David Lyons and Harry Lyons for Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Respondents.

WHITE, J.—Plaintiff instituted this action to recover damages for the alleged wrongful death of her husband,

Bennie Siegell, which occurred on July 23, 1945, as the result of a collision between an "Army" jeep operated by the deceased, a member of the armed forces of the United States, and a truck operated by the defendant York and owned by the other defendants.

By her first amended complaint, plaintiff alleged that defendant York was operating the truck as an employee of his codefendants; that he so negligently operated said truck as to cause it to collide with the automobile operated by the deceased, Siegell, resulting in injuries to the latter as the result of which he died.

By their answer, defendants denied the negligence alleged, and as an affirmative defense pleaded contributory negligence on the part of the deceased.

Upon the issues thus framed, the cause proceeded to trial before the court sitting without a jury, following which the court found that the defendant York was not guilty of negligence, and that the collision was due to the manner in which the deceased operated the vehicle which he was driving. Judgment was accordingly entered against plaintiff and in favor of defendants. From such judgment plaintiff prosecutes this appeal.

The accident occurred about 10 o'clock in the morning on what was known as the "county" road on the Muroc Army Air Base, and running from the main portion of the base in a northerly and southerly direction to a point where it curves about a 110 degree angle to the right and then runs generally in an easterly and westerly direction. The road has a width of 24 to 26 feet at the curve.

It is conceded by all parties hereto that there are but two possible alternatives as to the cause of the collision which is the basis of this action, viz., (a) either the truck crossed over the center of the highway and struck the "jeep," or (b) the "jeep" swerved or skidded across the center line of the road and into the truck.

Stating the evidence in a light most favorable to respondents, as we are required to do following a judgment in their favor, we find in the record testimony given by the respondent York that as the two vehicles approached the point of impact, he observed the "jeep" about 300 yards north of that point, and that his truck was then 100 yards south thereof, traveling 20 to 25 miles per hour; that from that point up to the collision his truck was at all times on

its proper side of the road. This testimony, if believed by the court, would warrant an inference that the "jeep" was traveling twice as fast as the truck. Respondent York also testified that when he first observed the "jeep" it was traveling on the right hand side of the road, but that when "the jeep was just, maybe 10 feet or 20 feet in front of me and suddenly it swerved to the left." That when the "jeep" "crossed over to the wrong side of the road" it was traveling "I think about 35 miles an hour—between 35 and 40."

Appellant produced testimony in conflict with the foregoing. One of her witnesses testified that "on the curve the truck . . . he was crowding the center of the road at the curve. I could see that"; that "the truck seemed to be holding the center of the road. What I mean is, he was hogging the road. . . ."

In response to a question as to where the collision occurred, the witness replied, "Yes, and Siegell's jeep at the time of the accident, judging *by the matter that had fallen off from the bottom of his jeep and the flesh,* his jeep hit on the truck at approximately two to two and a half feet from the center of the road on the side . . . ." (Emphasis added.) Manifestly, the testimony just quoted possessed little if any probative force, based as it was on the location of the flesh and debris which the witness observed in the road following the accident. As respondents comment in their brief, "There can be no doubt but that the impact was of great force for the left front wheel of the 'jeep' was thrown 15 to 20 feet into the air and thereafter the force of the jeep was such that it scraped along the entire left side of the truck, and it is readily inferred *that the debris which McKinney observed dropped from the 'jeep' as it veered to its right after striking the truck.*" This witness observed the truck for less than a minute, and he did not see it until it was within 25 feet from the point of the collision; that ". . . the truck seemed to be holding the center of the road. What I mean is, he was hogging the road, but I didn't notice any sharp turns before the collision." The witness also testified that respondent York's truck was slowing down at the time he observed it.

Another witness testified for appellant that he observed both vehicles prior to and at the time of the collision; that the deceased was "on the right side"; that as the respondent driver of the truck approached the point of impact he "was off his side of the road"; that he was "onto Siegell's side. He was crowding Siegell." This witness, however,

very definitely testified that the "jeep" struck the truck, and that respondent York's truck was on its proper side of the road. He also admitted that after the accident he had stated in substance that as the "jeep" turned into the curve, the deceased "seemed to lose control." Reference to the diagram attached to plaintiff's Exhibit 1 indicated that this witness placed the point of impact in the exact center of the road.

With reference to the claims advanced by both appellant and respondents, that some of the evidence given on behalf of the respective parties is inherently improbable because the so-called physical facts, supported by mathematical calculations, clearly demonstrate that the accident occurred by reason of the negligence of the other party thereto, we are not greatly impressed with these arguments and therefore, do not here set them forth. As was said in *Nagamatsu* v. *Roher*, 10 Cal.App.2d 752, 755, 756 [53 P.2d 174], "there is no possibility of mathematical exactness in such testimony as to the position and speed of another car. As is well known, such estimates of speed and distance are only approximations and in the nature of things could not be exact. . . . As has been frequently pointed out in cases of this nature, such arguments are unreliable because they fail to take into account the human element. . . . 'Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterward are not an infallible guide in determining what occurred.' " See, also, *Fischer* v. *Keen*, 43 Cal. App.2d 244, 250 [110 P.2d 693], and *Shannon* v. *Thomas*, 57 Cal.App.2d 187, 195 [134 P.2d 522].

In support of her contention that the finding of the trial court that there was no negligence or carelessness on the part of respondent York is definitely refuted by the undisputed evidence of the physical facts, appellant refers us to the cases of *Austin* v. *Newton*, 46 Cal.App. 493, 497 [189 P. 471], and *Chase* v. *Jonkey*, 12 Cal.App.2d 365, 369 [55 P.2d 1229]. But in both of the cited cases the evidence of the physical facts was indisputed, while in the case at bar they are in dispute, and reasonable minds might well draw different conclusions, depending upon whether appellant's or respondent's version thereof be adopted. It is noteworthy also, that in the first-cited case, after stating that "when the *undisputed* circumstances show that the story told by litigant and his witnesses cannot by any possibility be true, or when their testimony is inherently improbable, the appellate court should

not hesitate to reverse the judgment . . .,'' (italics ours) the court proceeds as follows:

''On the other hand, as an appellate court, it is our bounden duty to exercise great care and caution in applying the tests of common sense and common knowledge of physical laws to a given state of facts. Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable. For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witness seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is contrary to the evidence. (*Stokes* v. *Metropolitan Street Ry. Co.*, 173 Mo.App. 676 [160 S.W. 46].) Unless, therefore, we can say that, under the undisputed physical facts, the accident could not possibly have been due to defendant's negligence as alleged in the complaint, we must affirm the judgment. It is not sufficient that the story told by plaintiff and his witnesses may be improbable. It is for the jury or the trial judge to weigh and balance probabilities. We cannot reverse upon the ground that the finding of negligence is contrary to the evidence unless we can see that the fact as found contravenes recognized physical laws, and that therefore it is impossible that the accident could have been due to the negligence alleged in the complaint.''

Finally, appellant asserts that the presumptions that the deceased took ordinary care of his own concerns (Code Civ. Proc., § 1963, subd. 4), and that he obeyed the law (Code Civ. Proc., § 1963, subd. 33) have not been overcome by satisfactory evidence.

Concededly, there was present in this case the presumption that decedent, while operating the ''jeep,'' was at all times exercising the requisite degree and amount of care for his own safety, and that he was obedient to such provisions of the law or universal custom as required him to drive on the right hand side of the road. Such presumptions are a species of indirect evidence (Code Civ. Proc., § 1957), and will prevail in and control the deliberations of a jury or in the determination of a trial judge unless they are overcome by satisfactory evidence.

But when, as in the case now engaging our attention, direct evidence of an eyewitness was introduced to establish as a fact conduct and behavior on the part of the deceased at variance with and contrary to the presumptions, there was thereby created a conflict in the evidence, and the determination as to whether such direct evidence overcame the presumptions was peculiarly within the province of the trial court. When the ultimate fact is found from substantial evidence it cannot be said as a matter of law that any presumption will prevail. (*Taylor* v. *Taylor,* 66 Cal. App.2d 390, 397 [152 P.2d 480].)

We have carefully examined the record and are unable to find therein anything from which it could justly be said that the testimony of respondent York as to the immediate circumstances surrounding the fatal accident should be strictured as improbable or inherently unbelievable. True, there was a sharp conflict in the evidence, and had a judgment been rendered for the appellant it could be sustained. But that is not the test on appeal. Legion of authority supports the statement that when an attack is made upon a judgment on the ground that it is unsupported by the evidence, the power of the reviewing courts is limited to a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the judgment rendered. Therefore, on an appeal from a judgment for defendant in an action for damages, all conflicts in the evidence must be resolved in favor of the prevailing party.

Because it is the rule that all intendments are in favor of the judgment arrived at upon conflicting evidence, the fact that contradictory inferences can reasonably be drawn from the facts in evidence does not authorize an appellate tribunal to substitute other inferences for those drawn by the constitutional and statutory arbiter of facts. (*Juchert* v. *California Water Service Co.,* 16 Cal.2d 500, 503 [106 P.2d 886].)

We find no error in the record. The judgment is affirmed.

York, P. J., and Doran, J., concurred.