**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANE DOE I; JANE DOE II; JOHN
DOE I; JOHN DOE II individually
and on behalf of Wal-Mart
workers in Shenzhen China; JANE
DOE III; JANE DOE IV, individually
and on behalf of Wal-Mart
workers in Dhaka, Bangladesh;
JANE DOE V; JANE DOE VI; JOHN
DOE III, individually and on behalf
of Wal-Mart workers in Bogor,
Indonesia; JANE DOE VII; JANE
DOE VIII individually and on
behalf of Wal-Mart workers in
Mastaphia Swaziland; JANE DOE
IX; JANE DOE X; JANE DOE XI;
JOHN DOE IV, individually and on
behalf of Wal-Mart workers in
Managua and Sebaco, Nicaragua;
KRISTINE DALL; BRUCE REEVES;
CHRISTINE KAPOSY; SHARLOTTE
VILLACORTA, individually and on
behalf of similarly situated
California workers, c/o 8530
Stanton Avenue, Buena Park, CA
90622,
                    *Plaintiffs-Appellants,*

            v.

WAL-MART STORES, INC.,
                    *Defendant-Appellee.*

No. 08-55706

D.C. No.
2:05-cv-07307-AG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
May 8, 2009—Pasadena, California

Filed July 10, 2009

Before: Betty B. Fletcher, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Terrence P. Collingsworth, Natacha Thys, Conrad & Scherer, Washington, D.C.; Dan Stormer, Anne Richardson, Lisa Holder, Hadsell & Stormer, Pasadena, California, for the plaintiffs-appellants.

James N. Penrod, Thomas M. Peterson, Amy M. Spicer, Morgan, Lewis & Bockius, San Francisco, California, for the defendant-appellee.

Deborah J. La Fetra, Damien M. Schiff, Pacific Legal Foundation, Sacramento, California, for the amicus Pacific Legal Foundation.

Daniel J. Popeo, Richard A. Samp, Washington Legal Foundation, Washington, D.C.; Michael A. Carvin, Daniel R. Volkmuth, Jones Day, Washington, D.C., for the amicus Washington Legal Foundation and Allied Educational Foundation.

## OPINION

GOULD, Circuit Judge:

The appellants were among the plaintiffs in the district court and are employees of foreign companies that sell goods to Wal-Mart Stores, Inc. ("Wal-Mart"). They brought claims against Wal-Mart based on the working conditions in each of their employers' factories.[1] These claims relied primarily on a code of conduct included in Wal-Mart's supply contracts, specifying basic labor standards that suppliers must meet. The district court dismissed the complaint for failure to state a

---

[1]The complaint also included claims by California plaintiffs, who were employees of Wal-Mart's competitors. However, this appeal is brought only by the foreign plaintiffs.

claim under Federal Rule of Civil Procedure 12(b)(6). We
have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Plaintiffs are employees of Wal-Mart's foreign suppliers in
countries including China, Bangladesh, Indonesia, Swaziland,
and Nicaragua. Plaintiffs allege the following relevant facts,
which we take as true for purposes of this appeal:

In 1992, Wal-Mart developed a code of conduct for its sup-
pliers, entitled "Standards for Suppliers" ("Standards"). These
Standards were incorporated into its supply contracts with for-
eign suppliers. The Standards require foreign suppliers to
adhere to local laws and local industry standards regarding
working conditions like pay, hours, forced labor, child labor,
and discrimination. The Standards also include a paragraph
entitled "RIGHT OF INSPECTION":

> To further assure proper implementation of and com-
> pliance with the standards set forth herein, Wal-Mart
> or a third party designated by Wal-Mart will under-
> take affirmative measures, such as on-site inspection
> of production facilities, to implement and monitor
> said standards. Any supplier which fails or refuses to
> comply with these standards or does not allow
> inspection of production facilities is subject to
> immediate cancellation of any and all outstanding
> orders, refuse [sic] or return [sic] any shipment, and
> otherwise cease doing business [sic] with Wal-Mart.

Thus, each supplier must acknowledge that its failure to com-
ply with the Standards could result in cancellation of orders
and termination of its business relationship with Wal-Mart.

Wal-Mart represents to the public that it improves the lives
of its suppliers' employees and that it does not condone any
violation of the Standards. However, Plaintiffs allege that

Wal-Mart does not adequately monitor its suppliers and that Wal-Mart knows its suppliers often violate the Standards. Specifically, Plaintiffs claim that in 2004, only eight percent of audits were unannounced, and that workers are often coached on how to respond to auditors. Additionally, Plaintiffs allege that Wal-Mart's inspectors were pressured to produce positive reports of factories that were not in compliance with the Standards. Finally, Plaintiffs allege that the short deadlines and low prices in Wal-Mart's supply contracts force suppliers to violate the Standards in order to satisfy the terms of the contracts.

Plaintiffs filed a class action lawsuit in California Superior Court in 2005 and Wal-Mart removed the case to federal court based on diversity of citizenship. Plaintiffs then filed an amended complaint in federal court, which is the complaint relevant here. Wal-Mart filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted the motion in a written order, and judgment was entered on March 27, 2008.[2] Plaintiffs timely appealed.

---

[2]The district court granted Wal-Mart's motion to dismiss on April 2, 2007, but granted Plaintiffs 21 days' leave to amend. Instead of amending, Plaintiffs appealed; however, because no final judgment had been issued the parties stipulated to dismiss that appeal. The parties returned to district court and executed a stipulation stating that the April 2, 2007 order granting Wal-Mart's motion to dismiss was a final judgment. Wal-Mart now summarily contends that we might be without jurisdiction because the stipulation executed in the district court did not expressly reserve Plaintiffs' right to appeal. However, we conclude that we have jurisdiction because it is readily apparent that Plaintiffs did not give their "actual consent" to the entry of judgment on the merits against them; rather, they executed the stipulation so that they would have a final judgment to appeal. *See Tapper v. Comm'r of Internal Revenue*, 766 F.2d 401, 403 (9th Cir. 1985) (stating that we have jurisdiction when a stipulation is entered without a party's "actual consent" to judgment against that party).

## II

We review a dismissal under Rule 12(b)(6) *de novo*. *Witt v. Dep't of the Air Force*, 527 F.3d 806, 810 (9th Cir. 2008). We take a plaintiff's allegations in the complaint as true, but we are "not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

## III

Plaintiffs present four distinct legal theories, all of which aim to establish that the Standards and California common law provide substantive obligations that can be enforced by the foreign workers against Wal-Mart: (1) Plaintiffs are third-party beneficiaries of the Standards contained in Wal-Mart's supply contracts;[3] (2) Wal-Mart is Plaintiffs' joint employer; (3) Wal-Mart negligently breached a duty to monitor the suppliers and protect Plaintiffs from the suppliers' working conditions; (4) Wal-Mart was unjustly enriched by Plaintiffs' mistreatment. Applying California law, we address each claim in turn.

## A

**[1]** We first address Plaintiffs' third-party beneficiary theory. The common law in California and elsewhere establishes that, as recited in the applicable Restatement (Second) of Contracts: "A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304 (1981). However, the

---

[3]The parties disputed before the district court whether California or Arkansas law applies to Plaintiffs' third-party beneficiary contract claim. However, we need not now address that issue because the parties agree that both states apply the Restatement (Second)'s approach to third-party beneficiaries.

Restatement also explains that a beneficiary is only "an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties . . . ." Restatement (Second) of Contracts § 302(1). Contract interpretation is a question of law that we review *de novo. See Milenbach v. Comm'r of Internal Revenue*, 318 F.3d 924, 930 (9th Cir. 2003).

Plaintiffs argue that Wal-Mart promised the suppliers that it would monitor the suppliers' compliance with the Standards, and that Plaintiffs are third-party beneficiaries of that promise to monitor. Plaintiffs rely on this language in the Standards: "Wal-Mart will undertake affirmative measures, such as on-site inspection of production facilities, to implement and monitor said standards." We agree with the district court that this language does not create a duty on the part of Wal-Mart to monitor the suppliers, and does not provide Plaintiffs a right of action against Wal-Mart as third-party beneficiaries.

**[2]** The language and structure of the agreement show that Wal-Mart reserved the right to inspect the suppliers, but did not adopt a duty to inspect them. The language on which Plaintiffs rely is found in a paragraph entitled "Right of Inspection," contained in a two-page section entitled "Standards for Suppliers." And after stating Wal-Mart's intention to enforce the Standards through monitoring, the paragraph elaborates the potential consequences of a supplier's failure to comply with the Standards—Wal-Mart may cancel orders and cease doing business with that supplier—but contains no comparable adverse consequences for Wal-Mart if Wal-Mart does not monitor that supplier. Because, as we view the supply contracts, Wal-Mart made no promise to monitor the suppliers, no such promise flows to Plaintiffs as third-party beneficiaries. *See Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 226 Cal. Rptr. 321, 327 (Cal. Ct. App. 1986) ("A third party beneficiary cannot assert greater rights than those of the promisee under the contract.").

**[3]** Plaintiffs alternatively argue that they are third-party beneficiaries of the suppliers' promises to maintain certain working conditions, and that Plaintiffs may therefore sue Wal-Mart. This theory fails because Wal-Mart was the promisee vis-a-vis the suppliers' promises to follow the Standards, and Plaintiffs have not plausibly alleged a contractual duty on the part of Wal-Mart that would extend to Plaintiffs. *See Martinez v. Socoma Cos.*, 521 P.2d 841, 844-45 (Cal. 1974) (holding a "donee" third-party beneficiary may recover only against the party that undertook a promise under the contract for the benefit of the beneficiary).[4]

**[4]** Plaintiffs' allegations are insufficient to support the conclusion that Wal-Mart and the suppliers intended for Plaintiffs to have a right of performance against Wal-Mart under the supply contracts. *See* Restatement (Second) of Contracts § 302(1). We therefore conclude that Plaintiffs have not stated a claim against Wal-Mart as third-party beneficiaries of any contractual duty owed by Wal-Mart, and we affirm the district court's dismissal of the third-party beneficiary contract claim.

## B

We next address Plaintiffs' theory that Wal-Mart was Plaintiffs' joint employer, such that they can "sue Wal-Mart directly for any breach of contract or violation of labor laws." We conclude, to the contrary, that Wal-Mart cannot be considered Plaintiffs' employer on the facts alleged.

---

[4]The Restatement does suggest that a promisee may be liable to a third-party beneficiary when "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." Restatement (Second) of Contracts § 302(1)(a). The third-party creditor in such a case is commonly known as a "creditor beneficiary." Restatement (Second) of Contracts § 302, cmt. d. However, Plaintiffs have alleged no prior obligation by Wal-Mart that could support finding a contractual duty owed to Plaintiffs by Wal-Mart, and so the suppliers' employees cannot be considered to be creditor beneficiaries.

**[5]** The key factor to consider in analyzing whether an entity is an employer is "the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." *Serv. Employees Int'l Union v. County of L.A.*, 275 Cal. Rptr. 508, 513 (Cal. Ct. App. 1990) (internal quotations and citation omitted). "A finding of the right to control employment requires . . . a comprehensive and immediate level of 'day-to-day' authority over employment decisions." *Vernon v. State*, 10 Cal. Rptr. 3d 121, 132 (Cal. Ct. App. 2004).

**[6]** Here, Plaintiffs' allegations do not support the conclusion that Wal-Mart is Plaintiffs' employer. Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks and alterations omitted); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (holding that the pleading requirements stated in *Twombly* apply in all civil cases); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (stating that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"). Plaintiffs allege specifically that Wal-Mart contracted with suppliers regarding deadlines, quality of products, materials used, prices, and other common buyer-seller contract terms. Such supply contract terms do not constitute an "immediate level of 'day-to-day' " control over a supplier's employees so as to create an employment relationship between a purchaser and a supplier's employees. *Vernon*, 10 Cal. Rptr. 3d at 132.

Plaintiffs also allege that Wal-Mart exercised control over their employment through Wal-Mart's promise to monitor the

suppliers and Wal-Mart's system for monitoring. However, we have already concluded that Wal-Mart undertook no duty to monitor the suppliers and the monitoring and inspections by Wal-Mart were performed to determine whether suppliers were meeting their contractual obligations, not to direct the daily work activity of the suppliers' employees.

[7] Plaintiffs have provided no persuasive support for finding a common law employment relationship between a purchaser and its suppliers' employees on the facts of this case.[5] We conclude that the joint employer theory should here be rejected, and we hold that Wal-Mart is not Plaintiffs' employer.

## C

We next address Plaintiffs' negligence claims, which Plaintiffs bring under four distinct theories: third-party beneficiary negligence, negligent retention of control, negligent undertaking, and common law negligence. Whichever theory is invoked, however, we conclude that Wal-Mart did not owe Plaintiffs a common-law duty to monitor Wal-Mart's suppliers or to prevent the alleged intentional mistreatment of Plaintiffs by the suppliers. Without such a duty, Plaintiffs' negligence theories do not state a claim. *See Paz v. State*, 994 P.2d 975, 980-81 (Cal. 2000) ("The threshold element of a

---

[5]The cases cited by Plaintiffs regarding employment relationships are inapposite. Some of Plaintiffs' authorities rely on specific statutory and regulatory schemes, like the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, that use a definition of "employer" inapplicable to this context. *See, e.g.*, *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1467 (C.D. Cal. 1996) (applying the FLSA's definition of "employer," which covers entities "who might not qualify as [employers] under a strict application of traditional agency law principles"). Other cases cited by Plaintiffs involved significantly more control by the defendant over employment decisions than existed in this case. *See, e.g.*, *Loomis Cabinet Co. v. OSHRC*, 20 F.3d 938, 942 (9th Cir. 1994) (where the alleged employer "owned the workshop and all the equipment" and "participated to a great extent in . . . hiring and firing").

cause of action for negligence is the existence of a duty . . . .").

[8] Plaintiffs' "third-party beneficiary" negligence theory relies on the assumption that Wal-Mart owes Plaintiffs a duty under Wal-Mart's supply contracts. Because we have already determined that no legal obligation flows from Wal-Mart to Plaintiffs under Wal-Mart's supply contracts, Plaintiffs do not state a claim for third-party beneficiary negligence.

[9] In order to state a claim for "negligent retention of control and supervision," Plaintiffs must allege facts that, if proven, would show that Wal-Mart exercised significant control over Plaintiffs and that "exercise of retained control *affirmatively contributed* to the employee's injuries." *Hooker v. Dep't of Transp.*, 38 P.3d 1081, 1083 (Cal. 2002) (emphasis in original). We have already determined that Wal-Mart is not Plaintiffs' employer because Wal-Mart exercised minimal or no control over the day-to-day work of Plaintiffs in the suppliers' foreign factories. Accordingly, we hold that Wal-Mart did not owe Plaintiffs a special duty to protect Plaintiffs from the suppliers' alleged intentional misconduct.

[10] Plaintiffs' "negligent undertaking" theory relies on the assumption that Wal-Mart undertook to protect Plaintiffs, and therefore Wal-Mart had to exercise reasonable care in monitoring the suppliers. *See Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1175 (Cal. 2005) (stating that one who "undertakes to provide protective services to another" must exercise a duty of care). This theory fails because, as we have already concluded, Wal-Mart did not undertake any obligation to protect Plaintiffs. "[T]he scope of any duty assumed depends upon the nature of the undertaking," *id.*, and here Wal-Mart merely reserved the right to cancel its supply contracts if inspections revealed contractual breaches by the suppliers. Any inspections actually performed by Wal-Mart were therefore gratuitous, and do not independently impose a duty on Wal-Mart to protect Plaintiffs. *Id.*

**[11]** Plaintiffs' "common law negligence" claim provides no additional ground for finding a duty on the part of Wal-Mart. Wal-Mart had no duty to monitor the suppliers or to protect Plaintiffs from the intentional acts the suppliers allegedly committed. Thus, Plaintiffs' theories sounding in negligence do not state a claim. *See Paz*, 994 P.2d at 980-81.

**D**

**[12]** We turn finally to Plaintiffs' claim of unjust enrichment. Plaintiffs allege that Wal-Mart was unjustly enriched at Plaintiffs' expense by profiting from relationships with suppliers that Wal-Mart knew were engaged in substandard labor practices. Unjust enrichment is commonly understood as a theory upon which the remedy of restitution may be granted. *See* 1 George E. Palmer, Law of Restitution § 1.1 (1st ed. 1978 & Supp. 2009); Restatement of Restitution § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."). California's approach to unjust enrichment is consistent with this general understanding: "The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d 173, 176 (Cal. Ct. App. 1992) (emphasis in original).

**[13]** The lack of any prior relationship between Plaintiffs and Wal-Mart precludes the application of an unjust enrichment theory here. *See Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) (noting that a party generally may not seek to disgorge another's profits unless "a prior relationship between the parties subject to and benefitting from disgorgement originally resulted in unjust enrichment"). Plaintiffs essentially seek to disgorge profits allegedly earned by Wal-Mart at Plaintiffs' expense; however, we have already determined that Wal-Mart is not Plaintiffs' employer, and we

see no other plausible basis upon which the employee of a manufacturer, without more, may obtain restitution from one who purchases goods from that manufacturer. That is, the connection between Plaintiffs and Wal-Mart here is simply too attenuated to support an unjust enrichment claim. *See, e.g.*, *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (holding that "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support" the purchaser's claim of unjust enrichment).

## IV

In sum, we conclude that Plaintiffs have not stated a claim against Wal-Mart.[6] Wal-Mart had no legal duty under the Standards or common law negligence principles to monitor its suppliers or to protect Plaintiffs from the suppliers' alleged substandard labor practices. Wal-Mart is not Plaintiffs' employer, and the relationship between Wal-Mart and Plaintiffs is too attenuated to support restitution under an unjust enrichment theory.

**AFFIRMED.**

---

[6]Because we have determined that Plaintiffs did not state a claim under state law, we need not address Wal-Mart's additional contentions that United States domestic law does not apply and that foreign affairs preemption bars application of state law.